**SLIP OP 12 - 117**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| YAMA RIBBONS AND BOWS CO., LTD,<br><br>              Plaintiff,<br><br>                   v.<br><br>UNITED STATES,<br><br>              Defendant,<br><br>              and<br><br>BERWICK OFFRAY LLC,<br><br>              Defendant-Intervenor. | Before: Donald C. Pogue,<br>              Chief Judge<br><br>Court No. 10-00291 |

<u>OPINION</u>

[Commerce's final determination is affirmed.]

Dated: September 14, 2012

<u>John J. Kenkel</u>, <u>Gregory S. Menegaz</u>, and <u>J. Kevin Horgan</u>, DeKieffer & Horgan, of Washington, DC, for the Plaintiffs,

<u>Renee A. Gerber</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for the Defendant.  With her on the briefs were <u>Stuart F. Delery</u>, Acting Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director; and <u>Reginald T. Blades, Jr.</u>, Assistant Director.  Of counsel on the briefs were, <u>Daniel J. Calhoun</u>, Office of Chief Counsel for Import Administration, United States Department of Commerce, and

<u>Gregory C. Dorris</u>, Pepper Hamilton LLP, of Washington, DC, for the Defendant-Intervenor.

**Pogue, Chief Judge**: In this action, Plaintiff, Yama

Ribbons and Bows Co., Ltd. ("Yama"), a producer of ribbons,

challenges the final countervailing duty ("CVD") rate determined

by the United States Department of Commerce ("Commerce" or "the

Department") in an investigation of certain narrow woven ribbons

with woven selvedge[1] from the People's Republic of China

("China").  Specifically, Yama asserts that Commerce erred in

calculating a CVD subsidy rate for Yama's products by incorrectly

using the value of Yama's unconsolidated Chinese sales, rather

than Yama's consolidated Hong Kong sales, as the denominator in

the CVD subsidy calculation.  Yama claims that because the

unconsolidated sales were not the first sales at arm's length,

they are not the actual "sales value" required by Commerce's

regulations for determining a subsidy rate.

        The court has jurisdiction pursuant to 28 U.S.C.

§ 1581(c) (2006).  For the reasons explained below, Commerce's

decision to use Yama's unconsolidated Chinese sales to value the

denominator for the subsidy calculation is affirmed.


                          **BACKGROUND**

        This case arises from Commerce's CVD investigation,

initiated on August 16, 2009, to determine whether

---

        [1] Selvedge is the edge of ribbon on either side, woven such
that it will not fray or unravel.  Webster's Third New
International Dictionary 2062 (2002).

countervailable subsidies[2] had been granted to certain Chinese

manufacturers of narrow woven ribbons with woven selvedge.[3]  Yama

was a respondent in this investigation.  When calculating CVD

subsidy rates for a respondent, Commerce divides the value of

subsidy benefits by the sales value of the merchandise which

received the subsidies.[4]  In other words, the denominator in

Commerce's calculation is the sales value of the importer or

producer's subject merchandise.

     To calculate Yama's CVD rate, Commerce preliminarily

included sales from Yama's affiliated Hong Kong company, Yama

HK,[5] as part of the calculation's denominator.  Inclusion of the

---

     [2] A countervailing duty is imposed on an import when the
United States International Trade Commission has found "material
injury" to a domestic industry and Commerce determines that "the
government of a country or any public entity within the territory
of a country is providing, directly or indirectly, a
countervailable subsidy . . . ."  19 U.S.C. § 1671.  To be
countervailable, a subsidy must provide a financial contribution
to a specific industry, and the respondent must benefit.  See 19
U.S.C. § 1677(5)-(5A); Essar Steel Ltd. v. United States, 34 CIT
__, 721 F. Supp. 2d 1285, 1292 (2010).

     [3] The period of investigation is January 1, 2008 to December
31, 2008.

     [4] See 19 C.F.R. § 351.525(a) ("The Secretary will calculate
an ad valorem subsidy rate by dividing the amount of the benefit
allocated to the period of investigation or review by the sales
value during the same period of the product or products to which
the Secretary attributes the subsidy under paragraph (b) of this
section.").

     [5] The name of Yama's Hong Kong affiliate is confidential.
This opinion will refer to it as "Yama HK".

Hong Kong sales resulted in a preliminary *de minimis* subsidy rate

for Yama.  See <u>Narrow Woven Ribbons with Woven Selvedge from the

People's Republic of China</u>, 74 Fed. Reg. 66,090, 66,096 (Dep't

Commerce Dec. 14, 2009) (preliminary affirmative countervailing

duty determination and alignment of final countervailing duty

determination with final antidumping duty determination)

("<u>Preliminary Determination</u>").  Because the subsidy determination

was *de minimis*, Yama's imports would not have been subject to

countervailing duties.  See <u>id.</u>

        After considering comments from interested parties,

Commerce revised its calculations in its final determination to

exclude Yama HK's sales.  See <u>Narrow Woven Ribbons with Woven

Selvedge from the People's Republic of China</u>, 75 Fed. Reg. 41,801

(Dep't Commerce July 19, 2010) (final affirmative countervailing

duty determination) ("<u>Final Determination</u>") and accompanying

Issues and Decision Memorandum, (July 12, 2010), <u>available at</u>

http://ia.ita.doc.gov/frn/summary/PRC/2010-17541-1.pdf (last

visited Sept. 12, 2012)("<u>I&D Memo</u>").  Rather, Commerce used the

sale price of the merchandise from Yama to Yama HK as the

denominator.  <u>I&D Memo</u> at 20.  This exclusion resulted in a

subsidy rate greater than *de minimis*, and thus in the imposition

of countervailing duties.[6]  See <u>id.</u> at 20, 22.  Plaintiff now

_____

        [6] The final rate was calculated pursuant to 19 C.F.R.
§ 351.525(b)(6)(i), which states that, for companies with cross-

challenges the final CVD rate.


**STANDARD OF REVIEW**

        The court will sustain Commerce's determination if it

is supported by "substantial evidence on the record," and

"otherwise . . . in accordance with law."  Section

516A(b)(1)(B)(i) of the Tariff Act of 1930, 19 U.S.C.

§ 1516a(b)(1)(B)(i).[7]  To be in accordance with law, the agency's

decision must be authorized by the statute, and consistent with

the agency's regulations.  See, e.g., Hontex Enter., Inc. v.

United States, 27 CIT 272, 292–93, 248 F. Supp. 2d 1323, 1340–41

---

ownership, "the Secretary normally will attribute a subsidy to
the products produced by the corporation that received the
subsidy."
        In calculating the CVD subsidy rate, Commerce found that
Xiamen Yama Import and Export Co., Ltd. ("Yama Trading"), a
Chinese affiliate, supplied inputs to Yama.  It therefore
consolidated the sales of these two Chinese companies and
attributed the Chinese subsidies granted to both those Chinese
companies to their consolidated Chinese sales.
        While there are exceptions, listed in 19 C.F.R.
§ 351.525(b)(6)(ii)–(v), which create alternate CVD subsidy rate
calculation methods, Commerce determined that the CVD record did
not show contain sufficient evidence to support the application
of these exceptions.  I&D Memo at 20.  It therefore excluded
sales figures from the Hong Kong affiliate in its final
calculation of the denominator pursuant to 19 C.F.R.
§ 351.525(b)(6)(i).  See id.
        In supplemental briefing requested by the court, Plaintiff
made clear that it is not claiming any of the statutory
exceptions listed in 19 C.F.R. § 351.525(b)(6)(ii)–(v).

        [7] Further citations to the Tariff Act of 1930 are to Title
19 of the United States Code, 2006 edition.

(2003).


## DISCUSSION

Yama claims that the use of an intra-company transfer price, instead of the sales price to a U.S. consumer, as the denominator for its subsidy rate calculation, was improper.  It also claims that Commerce used an appropriate methodology in an analogous determination, Coated Free Sheet Papers from the People's Republic of China, 72 Fed. Reg. 60,645 (Dep't Commerce Oct. 25, 2007) (final affirmative countervailing duty determination) ("CFS Paper"), yet unreasonably refuses to follow its own prior practice.  These arguments are unavailing.

It is Commerce's practice to attribute subsidies to the company that received them.  19 C.F.R. § 351.525(b)(6)(i).  While there are exceptions that allow Commerce to attribute the subsidies to foreign cross-owned subsidiaries and affiliates,[8] Commerce must base its decisions on the record before it in each individual investigation.  With respect to data within their

---

[8] In antidumping ("AD") and CVD investigations, Commerce treats Hong Kong and the People's Republic of China as two separate countries.  See Application of U.S. Antidumping and Countervailing Duty Laws to Hong Kong, 62 Fed. Reg. 42,965 (Dep't Commerce Aug. 11, 1997); 22 U.S.C. § 5713(3) ("The United States should continue to treat Hong Kong as a territory which is fully autonomous from the United Kingdom and, after June 30, 1997, should treat Hong Kong as a territory which is fully autonomous from the People's Republic of China with respect to economic and trade matters.").

control, the burden rests on the interested parties "to create an

accurate record during Commerce's investigation."  Essar Steel

Ltd. v. United States, 678 F.3d 1268, 1277 (Fed. Cir. 2012).

I.  Denominator

As stated above, Commerce based the denominator of the

CVD calculation on the sales price from Yama to Yama HK.  Yama

argues that this calculation is improper because the transfer of

goods from Yama to Yama HK was not a sale at arm's length, but

rather an "artificial internal transfer price."  Pl.'s Rule 56.2

Mot. for J. upon the Agency R., ECF No. 22 at 32 ("Pl.'s Br.").

Yama notes that Commerce's verification report identifies the

figures Commerce used as "internal transfer values,"  Pl.'s Br.

at 33 (citing Commerce Verification Report: Yama Ribbons and Bows

Co., Ltd., (Mar. 17, 2010) Admin. R. Con. Doc. 148 at 5), and

contends that when Commerce acknowledged these were internal

transfers, it should have turned to the first arms-length sales,

namely, the sales from its Hong Kong affiliate.

Commerce correctly responds that only Chinese companies

(Yama and Yama Trading) received Chinese subsidies and therefore,

pursuant to 19 C.F.R. § 351.525(b)(6)(i), using sales figures

from Yama HK, a Hong Kong company, would be inappropriate.  Yama

HK did not directly receive any Chinese subsidies.  By excluding

Yama HK's sales from the denominator, Commerce complied with its

own regulation, which calls for it to attribute subsidies to the

sales of the companies which receive them.  See 19 C.F.R.

§ 351.525(b)(6)(i).  Furthermore, Commerce notes that it does not

have any information regarding Hong Kong subsidies that may have

been received by Yama HK, and therefore including the

consolidated Hong Kong sales in the denominator without properly

attributing any corresponding Hong Kong subsidies would be

inappropriate and contrary to the statute.  See 19 C.F.R.

§ 351.525(a).

        While Yama appears to have identified its cross-

ownership relationship with Yama HK early in the administrative

process in one of its questionnaire responses, the evidence

supporting its assertion of cross-ownership between the two

companies is not on the CVD administrative record, but rather,

appears to be proprietary data on the record for the accompanying

AD investigation.  See Pl.'s Br. at 38.  Yama contends that

Commerce should have requested the necessary information, but it

is well established that in AD and CVD investigations, the burden

falls on the interested party to place relevant information

within its possession on the record.  Statement of Administrative

Action Accompanying the Uruguay Round Agreements Act, H.R. Doc.

No. 103-316, vol. 1 (1994) at 829, reprinted in 1994 U.S.C.C.A.N.

4040; 19 C.F.R. § 351.401(b)(1) ("The interested party that is in

possession of the relevant information has the burden of

establishing to the satisfaction of [Commerce] the amount and

nature of a particular adjustment."\).  Therefore, while a cross-ownership relationship between Yama and Yama HK might exist, which potentially could place Yama in one of the exceptions listed under 19 C.F.R. § 351.525(b), Commerce was correct in not considering any of these exceptions because the record before it in the investigation did not contain any evidence to support the existence of such a relationship.  I&D Memo at 20.

## II.  Coated Free Sheet Paper methodology

Yama next argues that Commerce should have applied the methodology from CFS Paper, a case Yama claims is analogous to its own situation.  See Pl.'s Brief at 30 (citing CFS Paper). Yama notes a number of similarities between its situation and CFS Paper, namely that: (1) the price on which the alleged subsidy is based differs from the United States invoice price; (2) the exporter and the party who invoices the customer are affiliated; (3) the United States invoice establishes the customs value to which countervailing duties are applied; (4) there is a one-to-one correlation between the invoice that reflects the price on which subsidies are received and the invoice with the mark-up that accompanies the shipment; (5) the merchandise is shipped directly to the United States; and (6) the invoices can be tracked as back-to-back invoices that are identical except for price.  Id.

In response, Commerce makes two arguments: First, Yama

mischaracterized Commerce's calculations in <u>CFS Paper</u>.  Second,

even if the methodology used in <u>CFS Paper</u> would alter the outcome

here, Yama had the burden of providing verifiable documentation

sufficient for Commerce to make Yama's requested adjustment, and

Yama did not provide this data.  <u>See</u> Def.'s Opp'n to Pl.'s Rule

56.2 Mot. For J. upon the Agency R., ECF No. 31 at 38 ("Def.'s

Br.").

        Commerce clarified that in <u>CFS Paper</u> it did not, as

Plaintiff claims, simply use the consolidated sales figures

reflected in the affiliated reseller's prices as the denominator.

Rather, it adjusted the subsidies calculated by the ratio of the

sales value of exports from the investigated country and the

sales value in the United States.  <u>See</u> <u>id.</u>  Regardless, Commerce

continued, it would be unable to apply the <u>CFS Paper</u> calculation

methodology to a determination of the CVD margin for Yama,

because Yama failed to provide the necessary documentation,

which, as discussed *supra*, it bore the burden of producing.[9]

Commerce states that Yama has cited "<u>no</u> record evidence to

substantiate as a factual matter its eligibility for a rate

adjustment," Def.'s July 3 Letter, ECF No. 44, at 4 (emphasis in

original), and therefore it was reasonable to use the ad valorem

---

    [9]  Commerce clarified that the particular missing
information is any verifiable data regarding the above-mentioned
six criteria that Yama claims link its situation to that in <u>CFS
Paper</u>.  <u>See</u> Def.'s July 3 Letter, ECF No. 44 at 3.

subsidy rate calculation – without applying any of the exceptions

– specified in Commerce's applicable regulation.

        Yama argues that it submitted evidence of its

eligibility for a rate adjustment in the companion antidumping

investigation, and that Commerce should have pulled relevant data

from the AD record and placed it on the record in the CVD

proceeding.  Yama contends that the CVD proceeding "should be

seen as one combined proceeding with the simultaneous antidumping

investigation," especially because "the petition that initiated

the countervailing duty investigation was the same petition that

included the request for an antidumping investigation."  See

Pl.'s July 26 Letter, ECF No. 53 at 7-9.  However,  antidumping

duty and countervailing duty investigations operate pursuant to

different statutory provisions, are separate administrative

proceedings, and as such, each investigation has its own unique

and separate administrative record.  See 19 C.F.R § 351.306.

Importantly, the relevant data appears to be proprietary and

therefore it would have been inappropriate for Commerce simply to

move it from one administrative record to another.  See 19 C.F.R

§ 351.306 (authorizing sanctions against any Commerce employee

who discloses business proprietary information).  While Commerce

has discretion to transfer certain non-proprietary information

from one proceeding to another, see, e.g., Melamine Chemicals,

Inc. v. United States, 2 CIT 113, 115-16 (1981), it may not

unilaterally transfer proprietary information across administrative proceedings.  See 19 U.S.C. § 1677f(b)-(c); 19 C.F.R § 351.306.

Even assuming, *arguendo*, that Plaintiff may be correct in its assertions that Yama's merchandise was merely transferred from one company to another and therefore qualifies for the exception used in CFS Paper, the result does not change.  Absent any evidence on the administrative record supporting these claims, which Plaintiff has the burden of providing, Commerce's decision to use the unconsolidated sales figures as the denominator in its CVD rate calculation is supported by substantial evidence.

### CONCLUSION

For the reasons discussed above, Commerce's calculation of the countervailing duty rate for Plaintiff is AFFIRMED.  Judgment will be issued accordingly.

/s/ Donald C. Pogue
Donald C. Pogue, Chief Judge

Dated: September 14, 2012
       New York, New York

**SLIP OP 12 - 117**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

YAMA RIBBONS AND BOWS CO., LTD,

          Plaintiff,

              v.

UNITED STATES,

          Defendant,

          and

BERWICK OFFRAY LLC,

          Defendant-Intervenor.

Before: Donald C. Pogue,
        Chief Judge

Court No. 10-00291

**JUDGMENT**

      The court having heard and decided this matter, now in accordance with that opinion, Commerce's final determination is sustained.  This case is dismissed.

                                 /s/ Donald C. Pogue
                         Donald C. Pogue, Chief Judge

Dated: September 14, 2012
       New York, New York